THE NEW JERSEY RAILROAD AND TRANSPORTATION COM-
PANY *ads.* THE PENNSYLVANIA RAILROAD COMPANY.

1. Where a common carrier undertakes to carry an article for a com-
pensation, the legal presumption is that he does it subject to his common
law liability—and this presumption holds until disproved.

2. *Query.* Whether a party who merely tows a boat, furnishing nothing
but the motive power, is liable as a common carrier.

3. But where a railroad company takes a car, though on its own trucks,
over their railroad, and have the sole charge of it, they are, as to the ar-
ticle transported, common carriers.

4. Where an article is delivered to a common carrier for transportation,
he must exercise his own judgment as to the mode of carrying it, and
cannot escape liability by proving misrepresentations, unless they relate
to matters latent in their character.

This cause came before the court on a motion for a new
trial.    The facts in the case and the points presented to the
court sufficiently appear in the opinions delivered.

Argued at November Term, 1857, before the CHIEF JUS-
TICE, and Justices ELMER, POTTS, and HAINES.

*Zabriskie* and *Dayton,* for the motion.

*Bradley* and *Frelinghuysen, contra.*

POTTS, J.    This cause was tried at Essex Circuit, and a
verdict rendered for the plaintiffs for $2534.60 damages.

The action was brought against the New Jersey Railroad
and Transportation Company, for damages sustained by the
plaintiffs in the destruction of a car which, in process of
transportation over the defendants' road, had been thrown
from the track.

The defence was, that a special contract had been entered
into between the parties, by their agents, by which the car
was to be carried at the risk of the plaintiffs.

I. The first ground relied on for a new trial is, that the

special contract alleged was clearly established by the weight of evidence; and if this is so, the verdict undoubtedly should have been for the defendants.

The contract, whatever it was, was made in May, 1850, between Woodruff, as agent of the defendants, and Wasson, as agent of the plaintiffs. The cause was tried in January, 1856, nearly six years afterwards; and, as the alleged contract rested in parol, the jury had to consider how far it was probable the lapse of time had added to the uncertainty of the testimony adduced. This consideration naturally weighed most strongly against the defendants, because the *onus* was upon them to establish the special contract they set up by way of defence.

Where a common carrier undertakes to transport an article in his line of business, the legal presumption is that he does it subject to his common law liability. And this presumption remains until it is overcome by positive proof of a special agreement. 6 *Howard U. S. R.* 383.

Now in this case Woodruff and Wasson, the immediate parties to the transaction, are directly in conflict. Woodruff swears that he told Wasson the car was to go at his (Wasson's) risk, and that Wasson assented to it; while Wasson as expressly and positively swears that he never made any such contract as that it should be carried at the risk of the plaintiffs. It is true Mr. Counsellor testifies that he was present at a part of a conversation between Wasson and Woodruff, in which he heard the latter say to the former that the company would take no responsibility at all; and heard Wasson reply that he thought there was no risk—that he was going with the car, and was willing to run the risk; but what was said after this he does not know. And it is also true that Mr. Woodruff produced a written memorandum, which he said was made by himself at the time, expressing that the car was to go at the risk of the party applying to have it transported. But some doubt was thrown over Woodruff's testimony as to the *time* when it was made, the memo-

randum being dated the 9th of May—while, from Mr. Jacksons's letter, informing the plaintiffs of the injury sustained by the car, it would appear that the accident occurred on the 15th.

This was the only *direct* testimony in relation to the special contract. And the jury, who saw the witnesses, and heard the whole evidence, having weighed it, and come to the decision that it was not conclusive against the plaintiffs, I do not think we ought to disturb their verdict on that ground. It was the fault of the defendants, if they meant to make a special contract, that they did not put it in a more definite and certain shape.

The point was incidentally made, upon the argument, that this was not a case of *carrying* at all, but was analogous to that of towing a boat upon a water navigation, where the party supplying the motive power does not receive the boat into his custody, or exercise any control over it other than such as results from the act of towing; in which case it has been held that the common law liability of carrier does not attach. *Caton* v. *Rumney*, 13 *Wend.* 387; *Alexander* v. *Greene*, 3 *Hill* 9; *Wells* v. *Steam Navigation Co.*, 2 *Comstock* 207; *Leonard* v. *Hendrickson*, 18 *Penn. St. R.* 40. This doctrine has been denied or doubted in *Smith* v. *Pierce*, 1 *Louisiana R.* 349; *Adams* v. *New Orleans Steam Towboat Co.*, 11 *Ib.* 46; and *Vanderslice* v. *Steam Towboat Superior*, 13 *Law Rep.* 399. But, however the rule may be in cases of towing boats under these circumstances, the analogy does not hold good in the present case. Here the defendants received the car to take over their road, and had exclusive charge of it, though they took it on its own trucks.

II. In the second place, it is argued that the court below erred in instructing the jury, " that though the plaintiffs or their agent made misrepresentations to the defendants of the character and measurement of the car to be transported, yet that if such misrepresentations related to matters which might have been ascertained by the de-

fendants by measurement and examination, that such misrepresentations cannot be held to be a deception."

It appeared in evidence that Wasson had stated to the employees of the New Jersey road that the gauge of this car was one and a half inches narrower than the road, whereas in fact it was two inches narrower; and also, that Cumming's cars, which had been taken over the road, were of the same gauge as this, whereas the plaintiff's car had a narrower tread than Cumming's, amounting to half an inch on each wheel, making an inch difference in the tread. And it is alleged that it was these misrepresentations of Wasson which induced the defendants to take the car on its own trucks, and which occasioned its running off the road.

But it is clear that if the agents of the defendants had measured the gauge and tread of the car before putting it on the track, or examined it when on, they would have discovered the precise extent of both gauge and tread. They were, so to say, deceived with their eyes open. The facts were patent—discoverable by inspection or by measurement; and the court said, in substance, that if this was so, it was their own fault if they were deceived. In this there was no error.

When an article is delivered to a common carrier for transportation he must exercise his own judgment as to the mode of carrying it, and cannot shelter himself from the consequences of his common law liability by setting up misrepresentations, unless they respect matters which are latent in their character.

III. As to the third ground relied on, to wit, that it did not appear that the car was the property of the plaintiff at the time, I think the evidence was sufficient to warrant the verdict.

In my opinion, the rule should be discharged.

HAINES, J. When the cause was submitted to the jury I thought that the preponderance of the evidence was

---

N. J. R. R. Co. ads. Pennsylvania R. R. Co.

---

with the defendants, and that the defence was fairly sustained. But that depended upon the credit due to the witnesses and to the weight to be given to the circumstances proved. The jury, whose peculiar province it is to weigh the evidence and find the facts, differed from me in their conclusions, and rendered a verdict against the defendants. I cannot say that they were wrong, or that this court would be justified in setting their verdict aside.

I concur, therefore, in the opinion that the rule to show cause should be vacated.

The CHIEF JUSTICE and Justice ELMER concurred.